## BROWN-CRUMMER CO. v. W. M. RICE CONST. CO.

(Circuit Court of Appeals, Fifth Circuit. January 9, 1923. Rehearing Denied February 3, 1923.)

No. 3961.

1. Damages ⬤≈81—Provision of contract held one for penalty and not for liquidated damages.

In a contract for sale and purchase of county warrants, aggregating $186,000, a provision for deposit by the purchaser of $1,000, "which will be forfeited to you, should we fail to carry out the provisions of this proposal," *held* not one for liquidated damages, being regardless of the extent of the breach, or the actual damages resulting therefrom.

2. Counties ⬤≈167—Violation of contract for sale of warrants held to be question for jury.

The question whether plaintiff had violated a contract for sale of county warrants to defendant before its breach by defendant by refusing to accept and pay for further warrants tendered thereunder *held* properly submitted to the jury.

3. Counties ⬤≈167—Contract on sale of warrants made by correspondence cannot be avoided by refusal to execute formal contract.

Where a definite contract for the sale by plaintiff to defendant of county warrants was made first by agents of the parties and later through correspondence, leaving only customary details, well known to both parties to be supplied, such contract cannot be avoided by one party by refusing to execute a formal written contract, which it was understood should be made.

In Error to the District Court of the United States for the Northern District of Texas; William I. Grubb, Judge.

Action at law by the W. M. Rice Construction Company against the Brown-Crummer Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. M. Harris and Chas. A. Leddy, both of Dallas, Tex. (W. M. Harris and Merritt & Leddy, all of Dallas, Tex., on the brief), for plaintiff in error.

Joseph Manson McCormick, of Dallas, Tex. (Francis Marion Etheridge, Joseph Manson McCormick, and Henri Louis Bromberg, all of Dallas, Tex., on the brief), for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This was an action brought by the defendant in error (herein referred to as the plaintiff) against the plaintiff in error (herein referred to as the defendant) to recover damages for the breach of two alleged contracts, one for the purchase by the defendant from the plaintiff of $50,000 described road and bridge warrants of Freestone county, Tex., and $136,000 described courthouse building warrants of the same county, and the other for the purchase by the defendant from the plaintiff of $38,000 of courthouse furnishing warrants of the same county.

[1] The first-mentioned contract was evidenced by a written proposal, dated July 8, 1919, made by the defendant to the plaintiff and

accepted by the latter. That instrument, after describing the warrants proposed to be purchased, contained the following:

"We will pay $980 and accrued interest to date of delivery for each $1,000 bond and in addition thereto will furnish the blank printed warrants: Provided that, prior to the delivery of the above-mentioned warrants-bonds to us, we are to be furnished with a full and complete certified transcript of the proceedings had incident to and in the issuance of the warrants-bonds that will evidence the legality of the same to the satisfaction of our attorney. As evidence of our good faith in this proposal, we will deposit cashier's check in the amount of $1,000, which will be forfeited to you, should we fail to carry out the provisions of this proposal."

The defendant was charged with a partial breach of that contract, by failing and refusing to accept and pay for $27,000 of the courthouse building warrants and $24,000 of the road and bridge warrants. As to those warrants which the defendant refused to accept and pay for, the plaintiff asserted the right to recover the difference between the contract price and the lower price at which the warrants were salable after the date of the alleged breach, which difference evidence adduced showed amounted to considerably more than $1,000. In behalf of the defendant it was contended that the above-quoted concluding provision of the contract had the effect of liquidating the damages recoverable for the breach complained of, and that the defendant was justified in refusing to continue to accept and pay for warrants by the plaintiff's breach of its obligation under the contract by failing to furnish what was referred to as a nonlitigation certificate.

We think the court correctly ruled that the concluding provision of the contract was not one for liquidated damages. The use of the word "forfeited," unaccompanied by any qualifying or explanatory language, imports a penalty. Van Buren v. Digges, 11 How. 461, 477, 13 L. Ed. 771; Evans v. Moseley, 84 Kan. 322, 114 Pac. 374, 50 L. R. A. (N. S.) 889, and note. Furthermore, the stipulation is to the effect that the $1,000 was to be forfeited in case of any failure of the defendant to carry out its proposal; the provision being as applicable to a failure of the defendant to accept and pay for only one $1,000 warrant of the $186,000 contracted for as to its failure to accept and pay for all or $51,000 of such warrants. This circumstance indicates that the stipulation was not intended to be one for liquidated damages, but for a penalty to secure payment of the amount of damages suffered by the plaintiff from any breach of the contract by the defendant. Watts v. Camors, 115 U. S. 353, 6 Sup. Ct. 91, 29 L. Ed. 406; Sun Printing & Publishing Ass'n v. Moore, 183 U. S. 642, 22 Sup. Ct. 240, 46 L. Ed. 366. Nothing in the language of the stipulation, read in the light of the attending circumstances, indicates that the parties estimated or contemplated that for any breach by the defendant, whether total or partial, the damage to the plaintiff would be the same, or that plaintiff could be damaged to the extent of $1,000 by the defendant's failure to accept and pay for only one $1,000 warrant. The provision in question did not have the effect of fixing the amount of damages recoverable for the breach of the contract which was alleged and complained of.

[2] Evidence adduced tended to prove that the above set out provi-

sion of the contract as to the furnishing of a full and complete certified transcript of the proceedings had incident to and in the issuance of the warrants contracted for was construed by the parties to obligate the plaintiff to furnish a certificate by the proper official that there was no suit pending affecting the issuance of such warrants. There was evidence to support a finding that at the time the contract was entered into both parties thereto knew that a suit attacking the validity of warrants contracted for was then pending. That being so, it could not have been contemplated that the so-called nonlitigation certificate would be furnished until after that suit was finally disposed of. It was disclosed that, for an additional valuable consideration, the defendant, while that suit was pending, accepted and paid for part of the warrants contracted for, with the understanding that the nonlitigation certificate would be furnished after the termination of that suit. There was evidence to support a finding that the defendant breached the contract by stopping taking warrants, and refusing to accept and pay for any more, before the expiration, after the termination of such suit, of a reasonable time for the furnishing by the plaintiff of the required certificate. Under the evidence adduced, it was a question for the jury whether the plaintiff had or had not breached the contract, when the defendant refused to accept and pay for the undelivered portion of the warrants contracted for. That question was submitted to the jury under appropriate instructions.

[5] The claim based upon the defendant's refusal to take and pay for the $38,000 of courthouse furnishing warrants was resisted on the ground that there was no valid contract binding the defendant to purchase those warrants. Evidence adduced was to the following effect: Several months after the above-mentioned written contract was made a representative of the plaintiff and C. J. Moore, a representative of the defendant, were present at a meeting of the commissioners' court of Freestone county, at which bids on courthouse furnishings were to be submitted; it being understood that the price stated in the accepted bid would be paid in county warrants. The plaintiff had submitted a bid in an amount which was fixed on the assumption that the furnishing warrants could be sold at the same price at which the previously issued warrants had been contracted for by the defendant, 98 cents on the dollar. Upon plaintiff's representative being informed by Moore that the market price for such warrants had fallen, that defendant could offer only 92 for the furnishing warrants, and would buy the warrants at that price, the plaintiff raised its bid in the amount of the difference between 98 and 92, and took the contract on the basis of 92 flat on the warrants to be issued.

Under the previously made written contract between the parties, plaintiff was entitled to the accrued interest on the warrants covered by that contract. Based upon that circumstance, plaintiff's representative assumed that it was to have the benefit of the accrued interest on the furnishing warrants, though nothing was said about accrued interest in the conversation had on that occasion between the representatives of the two parties. The amount of furnishing warrants plaintiff was to get on its accepted bid and the rate of interest on those war-

rants were known at the time the defendant so agreed to buy them, if the plaintiff's amended bid was accepted. It was customary in such transactions to allow the buyer of warrants to draw up the form of warrants desired and to have them printed; the county authorities executing the printed forms furnished. This custom was followed in issuing the warrants called for by the previously made contract; the defendant furnishing the printed blanks used in making those warrants. Soon after the above-mentioned occurrence there was correspondence between the parties in regard to the furnishing warrants, which included the following:

"April 3, '20.

"The Brown-Crummer Co., Wichita, Kansas. Attention Mr. Moore. Dear Mr. Moore: Replying to your favor relative to the Freestone county furniture warrants, we are pleased to advise that we figured to deliver the warrants to you at a price of 92c. We to keep the small amount of accrued interest. If this is agreeable, we will send contract, together with any other data that you may require.

"Yours very truly,                                                 W. M. Rice Const. Co.,
                                                                          "Per W. M. Rice."

"Wichita, Kansas, April 5, 1920.

"W. M. Rice Construction Co., Amarillo, Texas—Gentlemen: We have your favor of the 3d inst. confirming sale to us of the Freestone county courthouse equipment warrants at 92c, the purchase of which we hereby confirm. Promptly upon Mr. Moore's return to the office, he will prepare formal contract and mail to you, together with list of requirements. Thanking you very kindly for this business, and with best regards, beg to remain,

"Yours very truly,                                           R. E. Crummer, Vice President."

"Wichita, Kansas, April 8, 1920.

"W. M. Rice Construction Company, Amarillo, Texas—Dear Mr. Rice: We are just in receipt of your letter of April 3d and note that you have amended our offer on the Freestone county courthouse equipment warrants to 92 cents and interest. We do not care to approve of this amendment, but, as advised heretofore, if you care to offer them at a price of 92 cents flat and with the date of delivery not longer than 60 days from to-day, we would be glad to go into a definite contract for the purchase of same. We would also call your attention to the fact that we have not yet had a copy of the contract entered into by you and the commissioners' court with regard to the purchase of these securities. Kindly let us have your early reply as to the price, and, if satisfactory, let us have the contract, so that we may proceed with the preparation of the proper orders for the court.

"Yours very truly,                         The Brown-Crummer Company,
"CJM/G.                                                          By C. J. Moore."

"April 12, 1920.

"Brown-Crummer Co., Wichita, Kansas—Dear Sirs: Will accept the proposition as laid down in yours of April 8, 1920. Will forward contract immediately upon return from Freestone Co.

"Yours very truly,                                           Rice Construction Co."

"May 3, 1920.

"The Brown-Crummer Co., Wichita, Kansas. Subject: Freestone Co. Furnishing Contract. Gentlemen: You will please find herewith inclosed copies of our contract with the commissioners' court of Freestone county, Texas, calling for the furnishing and installation of decoration, equipment, and furniture. You will please proceed with the printing of the warrants and have same to us at your earliest convenience, and greatly oblige.

"Yours very truly,                                  W. M. Rice Construction Co."

A letter of the defendant to the plaintiff, dated May 11, 1920, acknowledged the receipt of the above set out letter of May 3, stated

defendant's refusal to buy the warrants in question at the price there-tofore offered by it, and contained the following:

"If you will kindly refer to our correspondence had on this matter, you will find that you have never definitely accepted any proposition from us for the purchase of these warrants."

In behalf of the defendant it is contended that it incurred no enforceable obligation to buy the furnishing warrants, because there was no meeting of the minds of the parties in respect to such material features of those warrants as the time they were to run, when they were to be delivered, and where they were to be made payable, and because it was disclosed that it was contemplated that a definite contract for the purchase of the warrants was to be executed. We are of opinion that evidence adduced warranted a finding that the defendant agreed to buy the warrants in question at the price of 92 cents flat. It well might be inferred that the offer made by Moore on the day plaintiff's bid was accepted had reference to the warrants which would be issued in pursuance of that bid in the event of its acceptance, and that mention was not made of all material features of such warrants because of the knowledge of the existence of the custom of allowing the buyer to prepare such warrants in the form desired. Evidence adduced tended to prove that the offer then made to buy the warrants plaintiff would get if his bid was accepted was an unconditional one. The defendant's letter of April 5 evidences its continued willingness to incur the obligation to buy the warrants in question at the price stated, subject to no condition, except the one which was to be implied from the existence of the above-mentioned custom. That statement was not modified by what was stated in the defendant's letter of April 8, except that the latter named the price of 92 cents flat, specified date of delivery, and expressed a willingness to go into a definite contract for the purchase of the warrants. Plaintiff's letter of April 12 was an unequivocal acceptance of the proposition stated in the defendant's letter of April 8.

We are of opinion that evidence adduced warranted the conclusion that a binding contract was the result of such offer and acceptance. It was a permissible inference that the subject of such offer and acceptance was the same as the subject of the offer made on the day plaintiff's bid was accepted, namely, the warrants to be issued in pursuance of plaintiff's accepted bid, and that it was contemplated that the formal contract to be entered into would describe warrants prepared by the defendant in the form desired pursuant to the custom mentioned, similar to those recently issued by the same county and bought by the defendant from the plaintiff, which followed the printed form used by the defendant. It is to be noted that the defendant's refusal to take the warrants in question was based, not on a claim that there was any uncertainty as to the subject of the negotiations to which it had been a party, but on the untenable ground that the plaintiff had never definitely accepted any proposition of the defendant for the purchase of those warrants. The stipulation "to go into a definite contract for the purchase of same" called for a formal contract for the purchase by the defendant from the plaintiff of warrants in the amount and

bearing the rate of interest known to both parties and prepared by the defendant in the form desired by it pursuant to the prevailing custom. That stipulation did not keep the acceptance of the offer which embodied it from having the effect of creating an enforceable obligation of the defendant. A binding contract having been entered into, neither party could evade or defeat its obligations by refusing thereafter to enter into the formal contract stipulated for. Norris, Inc., v. M. H. Reed & Co. (C. C. A.) 278 Fed. 19. There is nothing to prevent one binding himself to buy at a price stated county warrants to be issued in pursuance of the contract resulting from the acceptance of such a bid as was made by the plaintiff, though at the time such obligation is incurred some features of such warrants are not mentioned or specified. The court did not err in ruling against the contention of the defendant that under no phase of the evidence adduced was plaintiff entitled to recover on the alleged contract for the purchase by the defendant of the courthouse furnishing warrants.

The conclusion is that the defendant is not entitled to a reversal on any ground urged. The judgment is affirmed.